1

2

3

4

5

6

7

8

9          IN THE UNITED STATES DISTRICT COURT

10         FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12  DOROTHY REED,                      No. C 07-3198 CW

13          Plaintiff,              ORDER DENYING PLAINTIFF'S
                                    MOTION FOR SUMMARY JUDGMENT OR
14      v.                          REMAND AND GRANTING DEFENDANT'S
                                    CROSS-MOTION FOR SUMMARY
15  MICHAEL J. ASTRUE, Commissioner  JUDGMENT
    of Social Security,
16
           Defendant.
17  _____/

18

19      Plaintiff Dorothy Reed has filed a motion for summary judgment

20  or, in the alternative, remand to the Commissioner of the Social

21  Security Administration (SSA) for further proceedings.  Defendant

22  Michael J. Astrue, in his capacity as Commissioner of the SSA,

23  opposes the motion and cross-moves for summary judgment.[1]  Having

24  considered all of the papers filed by the parties, the Court DENIES

25  Plaintiff's motion and GRANTS Defendant's cross-motion for summary

26  judgment.

27                          BACKGROUND

28  _____

        [1] Plaintiff has not submitted an opposition to Defendant's
    cross-motion or a reply to Defendant's opposition.

**United States District Court**
For the Northern District of California

I. Procedural History

On October 22, 2002, Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act. Plaintiff alleges that she became disabled on June 14, 2002, due to carpal tunnel syndrome, acute neck pain and depression.[2] Plaintiff's date last insured (DLI) is December 31, 2005. On March 14, 2003, her claim was denied. On July 21, 2003, Plaintiff filed a request for reconsideration, which was denied on December 18, 2003. On December 4, 2004, a hearing was held before an Administrative Law Judge (ALJ), at which Plaintiff appeared and was represented by counsel. On June 13, 2005, the ALJ issued an opinion finding that Plaintiff was not disabled within the meaning of the Act because she could perform the full range of light work as defined by the Medical-Vocational Guidelines (Grids).

On June 7, 2006, Plaintiff filed a request with the Appeals Council for review of the ALJ's decision. Although Plaintiff did not timely file the request for review, the Appeals Council accepted as "good cause" for the delay the fact that she and her attorney had not received copies of the hearing decision. On March 6, 2007, Plaintiff's attorney, Cynthia Starkey, sent the Appeals Council Plaintiff's updated medical documents. The Council incorporated these documents into the record. After considering the updated record, the Appeals Council, on April 13, 2007, denied

---

[2] Plaintiff alleged in her original disability application that she suffered from depression. However, the Administrative Law Judge (ALJ)'s decision does not mention Plaintiff's depression, and Plaintiff does not discuss this omission in her motion. Because it appears that this issue is not in dispute, the Court will not address it.

Plaintiff's request for review, finding that there was no abuse of discretion, error of law, lack of substantial evidence or introduction of new or material evidence.

On May 5, 2007, Plaintiff initiated the present action for judicial review under 42 U.S.C. § 405(g), seeking summary judgment or remand to the Commissioner.

II. Factual History

A. Plaintiff's Age, Education and Work Experience

Plaintiff was born on October 6, 1956, and was forty-six years old when she filed for Disability Benefits. (Transcript (TR) 73). There are inconsistencies in the record regarding Plaintiff's level of education and marital status. At her hearing, Plaintiff testified to completing high school plus three years of college. (Tr 340). However, at her psychological evaluation, Plaintiff stated that she had finished just eleven years of school. (Tr 155). Plaintiff stated at her psychological evaluation that she has never been married (Tr 156), but stated at her neurological evaluation that she was divorced. (Tr 203).

Plaintiff has worked as a customer service representative, mail sorter, linen room worker, packer and, most recently, as an at-home care provider. (Tr 133). During her most recent employment, Plaintiff was required to lift patients weighing over one hundred pounds up to five times a day. (Tr 134). On June 14, 2002, Plaintiff tripped on a patient's wheelchair and broke her fall with her right hand. (Tr 192). That same day, she went to the San Joaquin General Hospital emergency room, where she had x-rays taken. (Tr 193). Emergency room physicians suggested that she

wear a carpal tunnel splint temporarily.  (Tr 192).

Following this incident, Plaintiff filed a workers' compensation claim, and received some compensation for a limited time.  (Tr 342-43).  Plaintiff has been unemployed since June, 2002, and is no longer receiving workers' compensation or pension benefits.  (Tr 342).  However, she does receive public assistance. (Id.)

    B.  Plaintiff's Medical History

        1. Carpal Tunnel Syndrome

Plaintiff reported to her neurological evaluator that her carpal tunnel symptoms began three to four years before the June, 2002 incident.  (Tr 202).  The summary of the neurological report refers to a 2000 nerve conduction study, which showed bilateral carpal tunnel syndrome.  (Id.)  However, the medical reports documenting this diagnosis are missing from the record.  The first document in the record alluding to Plaintiff's hand pain is a January 7, 2002 progress report from the San Joaquin General Hospital orthopedic clinic.  (Tr 196).  In this report, a clinic physician recommended that Plaintiff treat the "pain [in] both hands," by wearing a carpal tunnel splint and taking Motrin.  (Id.)

At a later medical exam at the San Mateo Medical Center, Plaintiff informed the doctor that the pain from her carpal tunnel syndrome worsened following the June, 2002 accident.  (Tr 316).  She began physical therapy on August 21, 2002, and the San Joaquin Hospital progress notes indicate that she made "good progress." (Tr 182).  However, on May 29, 2003, her treating doctor at San Joaquin Hospital, Dr. Sabna Thoppil, found that she was temporarily

United States District Court
For the Northern District of California

incapacitated from May, 2002 to July, 2004, because she was unable to lift, push, or pull more than ten pounds at a time. (Tr 181). A medical report from the San Mateo Medical Center notes that the results of a November, 2003 electromyography (EMG) test on Plaintiff's wrist muscles were consistent with bilateral carpal tunnel syndrome. (Tr 316). The actual report of this test is missing from the record.

On November 6, 2003, neurologist Dr. Rebecca Jordan, a Department of Social Services consulting physician, examined Plaintiff and found that her left hand grip was twenty-five, twenty, twenty pounds and her right hand grip was twenty, twenty, twenty pounds. (Tr 205). Dr. Jordan opined that Plaintiff could lift and carry twenty-five pounds occasionally and ten pounds frequently, that she had limited feeling in both hands, and that both hands were capable of ordinary handling and use of push-pull devices. (Tr 206). Dr. Jordan recommended that Plaintiff "limit keyboard work and other such repetitive hand movements with either hand." (Tr 206).

On December 5, 2003, a Disability Determination Service (DDS) consulting physician reviewed Plaintiff's medical records and determined that she could lift twenty pounds occasionally and ten pounds frequently. (Tr 210). The DDS physician also concluded that Plaintiff had an unlimited ability to push, pull and reach with her left hand, that she could frequently push, pull, and reach with her right hand, and that she could frequently handle, finger and feel objects with both hands. (Tr 210, 212).

On August, 19, 2004, Dr. Jagdeep Mehrok, one of Plaintiff's

United States District Court
For the Northern District of California

1  treating physicians from San Joaquin Hospital, filled out a
2  "Complete Medical Report of Plaintiff's Physical and Mental Work-
3  Related Impairments." (Tr 243). In the report, Dr. Mehrok checked
4  boxes indicating that Plaintiff's symptoms limited her ability to
5  lift and carry objects to only ten pounds occasionally and that her
6  ability to grasp, manipulate, reach, handle, and push/pull objects
7  was limited to occasional exertions. (Tr 244-45).

8      Plaintiff's medication records show that she has been
9  prescribed Piroxicam and Naproxen, drugs that are commonly used to
10 treat pain and inflammation due to carpal tunnel syndrome. (Tr
11 287, 83); Physician's Desk Reference 2164, 2725 (62nd ed. 2008).

12      2. Neck Pain

13     At the November 6, 2003 neurological examination, Plaintiff
14 informed Dr. Jordan that she had developed acute neck pain after
15 the June, 2002 accident. (Tr 202). She stated that after she
16 slipped and fell at a Shell gas station on July 18, 2002, the pain
17 in the right side of her neck and shoulder worsened. (Tr 191).

18     As noted above, Plaintiff began physical therapy treatment in
19 August, 2002. (Tr 182). On October 10, 2002, Plaintiff visited
20 her physician, Dr. Thoppil, of the family practice at San Joaquin
21 General Hospital, complaining of severe right shoulder pain,
22 dizziness and spasms in her neck. (Tr 186). Later, Dr. Jordan
23 noted in her November 6, 2003 neurological report that Plaintiff
24 complained of "neck pain . . . radiating to the right shoulder
25 [which is] aggravated by certain positions while sleeping and
26 turning the neck." (Tr 202). She also noted that Plaintiff
27 complained of headaches, but found that "this seems to be an
28

extension or radiation of the neck pain." (Id.)  Dr. Jordan found a decreased range of motion and tenderness in the midline of the right paraspinous region. (Tr 204).  However, she did not find any gross deformity or spasm in Plaintiff's neck.  (Id.)  She also did not find that Plaintiff's neck pain affected her ability to sit or stand for up to six hours in an eight hour workday.  (Id. at 206)

The record shows that Plaintiff has been prescribed Vicodin for the pain in her neck and shoulder, and an anti-spastic medication called Baclofen.  (Tr 99, 148); Physician's Desk Reference 510, 3332 (62nd ed. 2008).

C.  Plaintiff's Statements

On November 11, 2002, Plaintiff completed an Exertional Daily Activities Questionnaire.  (Tr 117).  In it, she described how her alleged disability affected her daily life.  (Id.)  Plaintiff stated that her "hand gave out" while she combed her hair, cut vegetables and lifted pots.  (Id.)  She also described feeling pain in her hands following these activities.  (Id.)  Plaintiff stated that she was unable to push a grocery cart or lift the hood of her car without assistance.  (Tr 118).  Although she said that she could no longer do some activities she did prior to her injuries, like skating, dancing and bike riding, she stated that she could still drive to church and to the movies.  (Tr 118-19).  However, she noted that her hand hurt and cramped when she drove, "no matter where or [how] long."  (Tr 118).

On February 9, 2003, Plaintiff was evaluated by psychiatrist Dr. Andrea Bates.  Plaintiff told Dr. Bates that she smoked marijuana twenty-four hours a day, seven days a week.  (Tr 156).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

When asked about her activities of daily living, Plaintiff answered that she does household chores, shops, cooks, watches television and works in puzzle books.  She also stated that her hobbies included flying kites and skating.  (Id.)  She told Dr. Bates that sometimes she "may go in [her] car and drive, and just drive."  (Tr 155).

At the hearing before the ALJ on May 20, 2005, Plaintiff testified that her regular schedule consisted of driving three or four times a week, walking up and down eight stairs to her apartment two to three times a day, attending church services every Sunday morning, shopping once a month, watching approximately six hours of television a day, and working on a computer less than two hours a week.  (Tr 346-49).  She also testified that she could not sleep, that her hands "lock[ed] up and throb[bed] on me," her feet "swell[ed] and they hurt," and the muscles in her neck tightened and burned four to five times a day.  (Tr 344-36).  In order to relieve these symptoms, Plaintiff testified that she rested her hands every twenty minutes, dropped her head to relieve some of the tension in her neck, elevated her feet for thirty minutes, two or three times a day, and took prescription medication.  She also stated at her hearing that she smoked two marijuana cigarettes every morning and night, in contrast to her earlier statement to Dr. Bates that she smoked twenty-four hours a day, seven days a week.  Although she testified that the marijuana helped control her pain, she also stated that she had been using marijuana for no apparent medicinal purpose for approximately twelve or thirteen years.  (Tr 344-36).

8

**United States District Court**
For the Northern District of California

D. Third Party Statements

On November 11, 2002, Plaintiff's friend, Dyana Jones, completed a Daily Activities Questionnaire, answering questions regarding her observations of Plaintiff's daily activities. (Tr 120). Ms. Jones stated that Plaintiff had trouble sleeping at night, required assistance when she went shopping, and spent most of her time "alone watching tv or reading or sleeping." (Tr 120-21). She indicated that Plaintiff could still do all the household chores, but that she took more time to complete each task. (Tr 121-22).

On August 18, 2003, Petina Reed, Plaintiff's niece, filled out an Adult Function Report regarding Plaintiff's limitations. (Tr 87). Ms. Reed indicated that Plaintiff prepared food regularly, though she often had to stop and rest due to pain in her hands. (Tr 89). Ms. Reed also noted that Plaintiff had a difficult time cleaning her house and lifting any object weighing over five pounds. (Tr 90). Ms. Reed stated that Plaintiff could still take half mile walks, go to church, watch television and visit her family. (Tr 91-92).

III. The ALJ's Findings

After considering the record and Plaintiff's testimony at the hearing, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset of her disability, that her alleged impairments were "severe" but did not meet one of the listed impairments in the Social Security Act, that she could not perform any of her past work, and that she had the Residual Functional Capacity (RFC) to perform the full range of

light work.   (Tr 26).

The ALJ relied on Dr. Jordan's[3] finding that Plaintiff could lift or carry up to twenty-five pounds occasionally and ten pounds frequently, and could stand, walk or sit for six hours a day.   (Tr 23).   The ALJ also relied on Dr. Jordan's report to find that Plaintiff could frequently push/pull with her right arm, had unlimited use of her left arm for pushing/pulling, and could frequently handle, finger and feel with both hands.   (Id.)   In addition, the ALJ relied on the DDS consulting physician's assessment that Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently.   (Id.)

The ALJ accorded little weight to the opinions of Drs. Thoppil and Mehrok, who found that Plaintiff's bilateral carpal tunnel syndrome limited her ability to lift more than ten pounds at a time, and her ability to grasp, perform fine manipulation, reach, handle, and push/pull to only occasional exertions.   (Tr 23-24).   The ALJ also accorded little weight to Plaintiff's subjective complaints regarding the severity of her symptoms.   (Tr 24).   The ALJ based this finding on the fact that these opinions and testimony were inconsistent with the medical record, and with Plaintiff's daily activities and hobbies, which included taking care of her personal needs, running errands, shopping, cooking, driving, playing solitaire, solving magazine puzzles, flying kites and skating.   (Id.)   The ALJ also found that Plaintiff's testimony was not credible, given inconsistencies in her statements regarding her level of education, marital status, and the frequency of her

_____

[3] The ALJ refers to Dr. Jordan as Dr. Morgan in his opinion.

10

United States District Court
For the Northern District of California

marijuana use.  (Id.)  Moreover, the ALJ found that Plaintiff had "not submitted sufficient objective evidence, such as nerve conduction tests, to support her allegations."  (Id.)

The ALJ used the Medical-Vocational Guidelines (Grids) to determine whether Plaintiff could perform "substantially all" of the primary strength demands required by work at any level of exertion.  (Tr 25).  The ALJ's analysis of Plaintiff's RFC was that she could perform substantially all of the requirements of light work, which, according to 20 C.F.R § 404.1567, may include frequent pulling/pushing, a "good deal of walking or standing," and "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." (Tr 25-26).  The ALJ concluded that, because there are a significant number of jobs in the national economy that Plaintiff could perform, she was not "disabled" under the Social Security Act.  (Id.)

IV. Medical Documents Submitted After ALJ Opinion Issued

In March, 2007, Plaintiff submitted updated medical records to the Appeals Council.  As noted above, the Appeals Council accepted the additional evidence and incorporated it into the record.  These documents show that in May, 2005, five months following Plaintiff's hearing before the ALJ, Dr. Howard Belfer from the San Mateo Medical Center examined Plaintiff and found positive Tinel's sign[4] over the median nerves on Plaintiff's hands, and decreased sensation and strength in all her fingers.  (Tr 303).  On August

---

[4] Tinel's sign is a tingling sensation that a patient may feel at the site of a compressed or injured nerve.  The Merck Manual of Diagnosis and Therapy, 334, 339 (Robert Berkow et al. eds., Merck Research Laboratories 16th ed. 1992).

United States District Court
For the Northern District of California

31, 2005, Plaintiff underwent a nerve conduction study, and was diagnosed with moderate carpal tunnel syndrome and moderate bilateral ulnar neuropathy at the level of the elbow, more pronounced in Plaintiff's non-dominant left side.  (Tr 307).

The records also indicate that in March, 2006, Dr. Marcel Nguyen from the San Mateo Medical Center administered an injection of cortisone in Plaintiff's hands.[5]  (Tr 291).  The cortisone injection provided only temporary relief, and on May 3, 2006, Dr. Nguyen recommended that Plaintiff undergo surgery.  (Tr 258).  On February 6, 2007, Plaintiff had carpal tunnel release and ulnar transposition surgeries on her left hand.  (Tr 260).  Plaintiff was scheduled to have the carpal tunnel surgeries on her right hand on March 20, 2007.  (<u>Id.</u>)

LEGAL STANDARD

I.    Overturning a Denial of Benefits

A court cannot set aside a denial of benefits unless the ALJ's findings are based upon legal error or are not supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir. 1989); <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Orteza v. Shalala</u>, 50 F.3d 748, 749 (9th Cir. 1995).  It is more than a scintilla but less than a preponderance. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

---

[5] Cortisone is a hormone drug that is regularly used to treat inflammatory conditions.  <u>Black's Medical Dictionary</u>, 166 (51st ed. 2006).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1      To determine whether substantial evidence exists to support

2 the ALJ's decision, a court reviews the record as a whole, not just

3 the evidence supporting the decision of the ALJ.  <u>Walker v.</u>

4 <u>Matthews</u>, 546 F.2d 814, 818 (9th Cir. 1976).  A court may not

5 affirm the ALJ's decision simply by isolating a specific quantum of

6 supporting evidence.  <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir.

7 1989).  In short, a court must weigh the evidence that supports the

8 ALJ's conclusions and that which does not.  <u>Martinez</u>, 807 F.2d at

9 772.

10     If there is substantial evidence to support the decision of

11 the ALJ, even when the evidence is susceptible to more than one

12 rational interpretation, it is well-settled that the decision must

13 be upheld.  <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir.

14 1984).  If supported by substantial evidence, the findings of the

15 ALJ as to any fact will be conclusive.  42 U.S.C. § 405(g).

16     Ordinarily, the court reviews only the ALJ's decision because,

17 upon denial of review by the Appeals Council, the ALJ's decision

18 becomes the final agency decision.  20 C.F.R. § 416.1481.  However,

19 where the claimant submits evidence after the ALJ's decision, and

20 the Appeals Council specifically considers that evidence, the court

21 considers the rulings of both the ALJ and the Appeals Council, and

22 the record for review includes the new evidence.  <u>Ramirez v.</u>

23 <u>Shalala</u>, 8 F.3d 1449, 1451-52 (9th Cir. 1993)(providing that the

24 Appeals Council shall evaluate the entire record, including new

25 relevant evidence); <u>see also</u> <u>Harman v. Apfel</u>, 211 F.3d 1172, 1180

26 (9th Cir. 2000); <u>Bates v. Sullivan</u>, 894 F.2d 1059, 1063-64 (9th

27 Cir. 1990).

28 II.  Establishing Disability Under the Social Security Act

Under the Social Security Act, "disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A). The impairment must be so severe that the claimant "is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In addition, the impairment must result "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled within the meaning of the Social Security Act, the Social Security regulations set out a five-step sequential process. 20 C.F.R. § 404.1520(b)-(f); Baxter v. Sullivan, 923 F.2d 1391, 1395 (9th Cir. 1991). The burden of proof is on the claimant in steps one through four. Sanchez v. Secretary of Health and Human Servs., 812 F.2d 509, 511 (9th Cir. 1987). In step one, the claimant must show that he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). If the claimant is engaged in such activities, he or she is not disabled. Id. In step two, the claimant must show that he or she has a "medically severe impairment or combination of impairments" that significantly limits his or her ability to do basic work. 20 C.F.R. § 404.1520(c); Bowen v. Yuckert, 482 U.S. 137, 140 (1987); Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have

14

**United States District Court**
For the Northern District of California

such a medically severe impairment, he or she is not disabled.
Otherwise, the process continues to step three for a determination
of whether the impairment meets or equals a "listed" impairment
which the regulations acknowledge to be so severe as to preclude
substantial gainful activity.  Yuckert, 482 U.S. at 141; 20 C.F.R.
§ 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1.  If this
requirement is met, the claimant is conclusively presumed disabled;
if not, the evaluation proceeds to step four.

At step four, it must be determined whether the claimant can
still perform "past relevant work." Yuckert, 482 U.S. at 141; 20
C.F.R. § 404.1520(e).  If the claimant can perform such work, he or
she is not disabled.  If the claimant meets the burden of
establishing an inability to perform prior work, the burden of
proof shifts to the Commissioner at step five.  At step five, the
Commissioner must show that the claimant can perform other
substantial gainful work that exists in the national economy when
considering the claimant's age, education and work experience.
Yuckert, 482 U.S. at 142; 20 C.F.R. § 1520(g).

DISCUSSION

The parties agree that Plaintiff has not engaged in
substantial gainful employment since the onset date of her
impairments, that Plaintiff's bilateral carpal tunnel syndrome and
neck pain are "severe," that Plaintiff's medically determinable
impairments do not meet or medically equal any one of the listed
impairments in Appendix 1, Subpart P, Regulation No. 4, and that
Plaintiff cannot perform any of her past work.  (Tr 26).  The
relevant question here is whether Defendant has met his burden of
demonstrating that Plaintiff can perform other substantial gainful

United States District Court
For the Northern District of California

1  work that exists in the national economy.

2      Plaintiff presents four issues for review.  First, she

3  challenges the ALJ's RFC determination as unsupported by

4  substantial evidence.  Second, Plaintiff contends that the ALJ

5  improperly discounted her treating physicians' reports.  Third,

6  Plaintiff argues that the ALJ improperly rejected her statements

7  and the statements of third parties as lacking credibility.  And

8  finally, Plaintiff asserts that the ALJ's reliance on the Medical

9  Vocational Guidelines was improper.

10 I. Residual Functional Capacity (RFC) Determination

11     Plaintiff argues that the record as a whole does not support

12 the ALJ's finding that her RFC allows the "unlimited use of her

13 left upper extremity for pushing and/or pulling," the ability to

14 "lift/carry 20 pounds occasionally and 10 pounds frequently, . . .

15 frequently push and/or pull with her right upper extremity, . . .

16 [and] frequently handle, finger, and feel with her bilateral upper

17 extremities."  (Tr 26).  She points to new medical evidence, such

18 as the 2005 nerve conduction test, to support her assertion that

19 she suffers from disabling bilateral carpal tunnel syndrome.  (Tr

20 316, 243).  Plaintiff contends, at the very least, that the 2007

21 carpal tunnel release and ulnar transposition surgeries on her left

22 hand establish that she does not have "unlimited use of her left

23 upper extremity for pushing and/or pulling."  (Tr 260).

24     The Court finds, however, that even in light of the new

25 medical records, there is substantial evidence to support the ALJ's

26 conclusions.  Dr. Jordan, a medical specialist who examined

27 Plaintiff in November, 2003, found that she could lift or carry up

28 to twenty-five pounds occasionally and ten pounds frequently, and

could stand, walk or sit for six hours.  (Tr 206).  Moreover, the DDS physician who reviewed all of Plaintiff's medical records in December, 2003, found that she had an unlimited ability to push, pull and reach with her left hand, that she could frequently push, pull, and reach with her right hand, and that she could frequently handle, finger and feel objects with both hands.  (Tr 210, 212). Finally, Plaintiff testified at her hearing before the ALJ that her disabilities did not prevent her from driving, walking up and down stairs, attending church services, shopping, cooking or working on a computer.  (Tr 346-49).  This testimony, consistent with the medical opinions describing Plaintiff's physical limitations, constitutes substantial evidence supporting the ALJ's determination.

The Court also finds that the Appeals Council's conclusion that Plaintiff's new medical records did not constitute "new and material evidence" was reasonable.  Although the new records confirm that Plaintiff suffered from moderate bilateral carpal tunnel syndrome during the relevant time period, they do not support a finding that this condition was disabling.  There is no mention in the new records that the condition limited Plaintiff's ability to lift, carry, push or pull, or had any other effect on her physical capabilities.  Moreover, as Defendant argues, Plaintiff's 2007 hand surgeries are not determinative, because they took place more than one year after Plaintiff's DLI.  See Morgan v. Sullivan, 945 F.2d 1079, 1080 (9th Cir. 1991) (holding that the claimant bears the burden of establishing the presence of a disability on or before the relevant DLI).  In fact, the surgeries lend support to the ALJ's determination, because they demonstrate

**United States District Court**
For the Northern District of California

1    that Plaintiff's condition was not permanently disabling, but

2    treatable.  Therefore, remand is not warranted on this basis.

3    II.  Treating Physician's Report

4        Plaintiff also contests the ALJ's decision to "accord little

5    weight" to the opinion of her treating physician, Dr. Mehrok,

6    without providing any "good reasons" for doing so.  (Tr 24).

7        "Generally, [the Commissioner] give[s] more weight to opinions

8    from . . . treating sources, since these sources are likely to be

9    the medical professionals more able to provide a detailed,

10   longitudal picture of . . . [claimant's] medical impairment(s) and

11   may bring a unique perspective to the medical evidence that cannot

12   be obtained from . . . reports of individual examinations, such as

13   consultative examinations or brief hospitalizations."  20 C.F.R.

14   § 404.1527(d)(2).  For this reason, if an ALJ chooses to reject a

15   treating physician's opinion, he or she must provide "good reasons"

16   for doing so.  20 C.F.R. § 404.1527(d)(1).

17       Factors that the Commissioner takes into account in deciding

18   whether to grant a treating physician's opinion controlling weight

19   include: consistency with the record as a whole, the amount of

20   medical evidence supporting the physician's opinion, "particularly

21   medical signs and laboratory findings," the nature and extent of

22   the treatment relationship and the frequency of examinations.  20

23   C.F.R. § 404.1527(d)(1-4).  In addition, the ALJ need not accept a

24   treating physician's opinion which is "brief and conclusionary in

25   form with little in the way of clinical findings to support [its]

26   conclusion."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.

27   1989).  Finally, the ALJ may discount a treating physician's

United States District Court
For the Northern District of California

opinion if it contradicts the results of an independent examination conducted by a non-treating physician. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Where the opinion of a treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the non-treating physician may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.").

The ALJ's decision to accord little weight to Dr. Mehrok's testimony was based on his finding that Dr. Mehrok's opinion was "not consistent with the medical evidence [and] the claimant's activities of daily living and hobbies." (Tr 24). Dr. Jordan, a non-treating physician who examined Plaintiff, concluded that Plaintiff could carry up to twenty-five pounds occasionally and ten pounds frequently, directly contradicting Dr. Mehrok's conclusion that Plaintiff could carry only ten pounds occasionally. Because Dr. Jordan's findings were based on a direct medical examination of Plaintiff's motor skills, they are sufficient to constitute "substantial evidence." See Andrews, 53 F.3d at 1041. Moreover, because Dr. Mehrok's report is a brief check-mark form which provides little explanation of the clinical findings used to support its conclusions, the ALJ was not required to accept it as controlling evidence. In addition, there is no evidence in the record that demonstrates that Dr. Mehrok and Plaintiff had an ongoing doctor-patient relationship. Therefore, the Court finds that the ALJ's decision to discount Dr. Mehrok's medical opinion

19

was not error.

III. Plaintiff's Symptom Reporting and Third Party Statements

Plaintiff contends that the ALJ's decision to discount her statements regarding the severity of her symptoms was not based on "clear and convincing reasons."

For an ALJ to reject the claimant's complaints, he or she must provide "specific, cogent reasons for the disbelief." Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); see also Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings").

Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Varney v. Secretary of Health and Human Services, 846 F.2d 581, 584 (9th Cir. 1988). In determining whether a plaintiff's testimony concerning the severity of her symptoms is credible, the ALJ may consider "the

United States District Court
For the Northern District of California

claimant's daily activities [and] inconsistencies in testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (per curiam).

Plaintiff's inconsistent statements regarding the frequency of her marijuana use, her educational level and her marital status provide "clear and convincing" reasons for discounting her testimony.  Although Plaintiff's use of the expression "twenty-four hours a day, seven days a week," to describe her drug habit does not necessarily contradict the more realistic testimony that she smokes marijuana twice a day, her testimony that she smoked marijuana to control her pain is inconsistent with her testimony that she had been smoking for thirteen years, before there was any evidence that she suffered from carpal tunnel syndrome.  (Tr 156, 345).  This inconsistency, taken together with Plaintiff's inconsistent statements regarding her level of education and marital status, undermines her credibility.

In addition, the inconsistencies between Plaintiff's stated daily activities and her symptom-reporting provide another "clear and convincing reason" for discounting her testimony.  The record shows that Plaintiff drives to doctor's appointments and to the store three to four times per week, goes up and down a flight of eight steps two to three times per day, attends church on Sundays, shops once a month, uses a computer for email and to play solitaire, does household chores, runs errands, cooks, and may even fly kites and skate.  (Tr 24).  Plaintiff also stated to Dr. Bates that she sometimes gets into her car and "just drives," although she wrote in her Exertional Daily Activities Questionnaire that her

United States District Court
For the Northern District of California

hand hurt and cramped when she drove, "no matter where or [how] long." (Tr 118, 155). Moreover, although Plaintiff testified that her hands would "lock up and throb" during these activities, she did not state that the pain was debilitating, or that her medication or marijuana use was ineffective in controlling her symptoms. (Tr 344-36). Therefore, the Court finds that the ALJ has provided sufficiently clear and convincing reasons for rejecting Plaintiff's testimony of her physical limitations.

Plaintiff also argues that the ALJ failed sufficiently to consider the testimony of third parties, because he did not "acknowledge . . . the [specific] contents of . . . third party statements. (Docket no. 13 at 9). An ALJ must consider lay testimony as to a claimant's symptoms in making a disability determination. Stout v. Commissioner of Social Sec., 454 F.3d 1050, 1053 (9th Cir. 2006). This testimony "cannot be disregarded without comment." Id. "If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

Here, the ALJ did not say that he discounted the testimony of third parties. In fact, he stated in his opinion that he "considered the . . . third party statements and concludes that the claimant's impairments could reasonably be expected to produce some of the pain alleged." (Tr 24). The ALJ is not required to acknowledge the specific content of a third party statement if he

United States District Court
For the Northern District of California

1  considered that statement and gave it its due weight.  Thus, remand

2  is not warranted on this ground.

3  IV.  Medical-Vocational Guidelines (Grids)

4
5      Plaintiff argues that the ALJ's use of the Grids was improper

6  because she cannot meet substantially all of the strength demands

7  of light or sedentary work.

8      The Grids are administrative tools that the Commissioner may

9  use at step five of the disability evaluation.  Burkhart v. Bowen,

10 856 F.2d 1335, 1340 (9th Cir. 1988).  Based on age, education, work

11 experience, and "exertional capacity," the Grids determine the

12 employability of claimants with "substantially uniform levels of

13 impairment."  Id.  However, the ALJ may rely on the Grids only when

14 they "accurately and completely describe the claimant's abilities

15 and limitations."  Id.; see also Tackett v. Apfel, 180 F.3d 1094,

16 1102 (9th Cir. 1999).  That is, the Grids may be used to direct an

17 unfavorable decision only if the claimant has the exertional RFC to

18 meet substantially all of the strength demands required by work at

19 the given level of exertion.  Social Security Ruling 83-10.

20     According to 20 C.F.R § 404.1567, light work may include

21 frequent pulling/pushing and "lifting no more than 20 pounds at a

22 time with frequent lifting or carrying of objects weighing up to 10

23 pounds."  20 C.F.R § 404.1567(b).  As stated above, the ALJ's

24 finding that Plaintiff can frequently pull and push and lift

25 objects weighing up to twenty pounds was based on substantial

26 evidence in the record.  Because there is sufficient evidence

27 demonstrating that Plaintiff can meet substantially all the

28 strength demands required by light work, the ALJ's use of the Grids

to direct an unfavorable decision was proper.

Plaintiff also argues that the ALJ's use of the Grids was improper because the loss of dexterity in her hands prevented her from performing substantially all of the requirements for sedentary work.  As the Social Security Act explains and the ALJ noted, "If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R § 404.1567(b).  However, the ALJ did not address whether or not Plaintiff had any of these limiting factors, nor did he conclude that she could perform substantially all of the requirements for sedentary work.  His finding that there are a significant number of jobs in the national economy that Plaintiff can perform was based entirely on his finding that she could perform substantially all the requirements of light work.

CONCLUSION

For the foregoing reasons, Defendant's cross-motion for summary judgment is GRANTED (Docket no. 16) and Plaintiff's motion for summary judgment/remand is DENIED (Docket no. 13).  Judgment shall enter accordingly.  The parties shall bear their own costs.

IT IS SO ORDERED.

Dated: 8/8/22/08

_____
CLAUDIA WILKEN
United States District Judge